# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE NICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 17-1104-JDT-cgc |
| | ) | |
| CORECIVIC, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

The *pro se* prisoner Plaintiff, Terrance Nichols, who is incarcerated at the Hardeman County Correctional Facility (HCCF), in Whiteville, Tennessee, filed this action jointly with five other inmates pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On March 26, 2018, the Court issued an order that, *inter alia*, severed the Plaintiffs' claims and directed the Clerk to open separate cases for the other remaining Plaintiffs. (ECF No. 16.) Plaintiff Nichols is now the sole Plaintiff in this case. After Plaintiff Nichols filed a motion to proceed *in forma pauperis* and a trust account statement, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 20.) The Clerk shall record the Defendants as Core Civic (formerly Corrections Corporation of America (CCA)); Tony Parker, Commissioner of the Tennessee Department of Correction (TDOC); Grady Perry, HCCF Warden; Charlotte Burns, Assistant Warden; Taneshia Douglas Robertson, Unit

Manager; Daniel Akers, Assistant Warden; Byron Ponds, Chief of Security; Nechol Owens, Chief of Unit Management; Chaplain John Gore; and Darnell Peterson, TDOC Liaison/HCCF Contract Manager.

The complaint alleges that various practices have been put in place at the HCCF, each of which violates the constitutional rights of the inmates at the facility. The first allegation concerns the implementation of the Tier Management System (TMS). The complaint references two sections of TDOC policy #506.14. The first policy section defines TMS as:

> A supervision method that allows one half/tier of a medium or higher custody level group of inmates out of their cells into the pod/unit for leisure activities. This does not include the release of inmates for meals (outside the unit), gym, recreation/ball field activities, education and/or programs.

TDOC Policy #506.14(IV)(K). The second section referenced in the complaint provides:

> General population units/pods with a capacity to house 64 or more inmates who are medium or higher custody shall supervise in accordance with Policy #506.01, and shall adhere to the Tier Management System model at all times. Inmates shall be allowed out of their cells for dayroom activities by tier/walk as determined by the institutional policy; however, inmates housed on the upper and lower tier/walk shall not be allowed out of their cells for pod/dayroom activities at the same time. Staff shall ensure all cell doors are secured when inmates are released out of their cell.

*Id.* #506.14(VI)(E).

Plaintiff asserts that the TMS is not appropriate for use at the HCCF because none of the pods at the facility have the "capacity to house 64 or more inmates who are medium or higher custody." It is further alleged that the Defendants are violating the constitutional rights of inmates at the HCCF because the TMS is being used for the illegal purpose of

keeping inmates in their cells for longer periods of time regardless of security level. (ECF No. 1 at 10.)

After implementation of the TMS, Defendants allegedly also implemented several additional "new, unwritten and unpublished" policies or practices which allegedly violate the constitutional rights of inmates at the HCCF. Under the policy or practice of "lock-in/lock-out," inmates are allowed to leave or enter their cells only once each hour; at all other times, the cell door must remain locked. (*Id.* at 11.) This lock-in/lock-out policy allegedly does not comply with TDOC Policy #506.14(V), which provides that "[h]ousing assignments for inmates shall reflect a balance between custody and control requirements, inmate needs, and TDOC resources consistent with the least restrictive level of custody." It is further alleged that lock-in/lock-out places inmates in danger because if violence breaks out in a pod day-room, they cannot get back into their cells, out of harm's way. In addition, an inmate may not have access to the toilet and sink in his cell for up to an hour at a time. (ECF No. 1 at 11.)

Plaintiff also alleges the Defendants began feeding most inmates in their pods instead of having them go to the main dining room for every meal. This practice is said to vary "from day to day, meal to meal, and pod to pod, without apparent reason." (*Id.* at 12.) Feeding inmates in their pods allegedly is done so that prison officials can keep the inmates locked down both during and after meals. (*Id.* at 18.)

In addition, Defendants allegedly began using blanket punishments at the HCCF, which punishes a group of inmates for the actions of only one or a few. It is stated that most such punishments involve the lockdown of an entire pod, and the alleged result is that

3

inmates are pitted against one another because the inmates who were not involved in the misbehavior seek revenge on those in the pod who caused the lockdown. (*Id.* at 12.)

Plaintiff further alleges there is a policy or practice of excessive lockdowns at the HCCF and that often no reason for a particular lockdown is given. Such lockdowns may last from few minutes to for many days and may involve the entire prison only a particular hallway or unit, or a particular pod or pods. Excessive lockdowns allegedly create hardship on the inmates who are affected because telephone calls cannot be made, visits from the public are suspended, programs are canceled, cells cannot be cleaned, showers are allowed only every three days, provision of needed daily medications is inconsistent, and there is no opportunity for exercise or fresh air. Inmates also allegedly are denied the opportunity to earn program and good time credits during a lockdown. Further, inmates also sometimes react to a lockdown by fighting among themselves over the limited access to telephones, cleaning tools and showers. (*Id.* at 13-14.)

Another new policy that allegedly was implemented is a "CCA-specific" count time from 6:00 p.m. to approximately 7:45. This policy allegedly is not required by or practiced by the TDOC and is done merely for the convenience of HCCF and CoreCivic staff by stopping all inmate movement for a period of time every evening, with inmates in the pods locked down. (*Id.* at 18.)

Plaintiff also appears to allege the Defendants denied inmates at the HCCF access to religious services in violation of the First Amendment. However, the only factual allegations pertaining to such a claim is a long list stating that services for particular religious faiths were not held on certain dates. For example:

> 125. On January 4th, 2015, no Fresh Fire Pentecost religious service was held.
> 126. On January 10th, 2015, no Seventh Day Adventist Religious service was held.
> . . . .
> 132. On February 9th, 2015, all religious services were canceled.
> . . . .
> 249. On January 8th, 2016, no Jummah religious services were held.
> . . . .
> 274. On March 19th, 2016, no Christian Faith Tabernacle religious service was held.
> . . . .
> 391. On November 15th, 2016, no Anchor of Hope religious service was held.
> . . . .
> 447. On January 20th, 2017, inmates on F&G hallway were not allowed to participate in the Jummah religious services.
> . . . .
> 518. On April 6, 2017, no Bellvue Baptist religious service was held.
> . . . .

(*Id.* at 25-47.)

The complaint alleges that the result of all these practices is the violation of the inmates' constitutional rights against cruel and unusual punishment, the denial of access to law libraries, and the denial of access to religious services. (*Id.* at 15.) Further, the complaint contends that Defendants Peterson and Perry are aware of the violations but have failed to remedy the situation. (*Id.* at 15, 20.) Various types of injunctive relief are sought, as well as "any other relief available." (*Id.* a 59-61.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for

6

> relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral

7

arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The complaint is filed pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The allegations in the complaint in this case are stated only generally, asserting that the policies and practices implemented by the Defendants affected most or all of the inmates at the HCCF. However, Plaintiff Nichols does not have standing to assert claims on behalf of any inmate other than himself, and there are no factual allegations in the complaint setting out how Plaintiff Nichols was personally affected or harmed by the policies and practices of which he complains. One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless Plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001).

Because Plaintiff Nichols cannot sue on behalf of other HCCF inmates and has not alleged that he suffered any personal injury from the policies or practices of which he complains, he has not established that he has standing to pursue this action and has failed to state a claim on which relief may be granted. Therefore, the case is subject to dismissal in its entirety.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua*

9

*sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that Nichols should be given an opportunity to amend the complaint.

In conclusion, the Court DISMISSES Nichols's complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to amend is GRANTED. Any amendment must be filed within twenty-one (21) days after the date of this order.

Nichols is advised that any amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleading. The text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Nichols fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

     s/ **James D. Todd**  
     JAMES D. TODD  
     UNITED STATES DISTRICT JUDGE